## Luther *versus* Fowler.

1. The statute of Ohio, which authorizes a proceeding *in rem* against all vessels for debts and liabilities contracted for the use of the same, is constitutional. The seizure of the boat or vessel is sufficient notice to the owner to confer jurisdiction.

2. Where the hands employed on a canal boat, sent by the owner from Pennsylvania to Ohio, attached the boat for wages, under the statute of the latter State, it was held, that a sale under these proceedings divested the owner's title, and vested the property in the boat in the purchaser.

ERROR to the Court of Common Pleas of *Mercer county.*

The facts of the case are fully stated in the opinion of the court below, by M'CALMONT, P., as follows :

"The plaintiff in this suit, William T. Luther, residing in the State of Pennsylvania, was, in the spring and summer of the year 1850, the owner of a canal boat, named " The Huron." Gilbert Henderson became the master and captain of the boat, and whilst under his charge, it was taken into the State of Ohio, and was, in the summer of that year, laden with 250 barrels of salt, consigned to M. B. Taylor, of Warren, Ohio. The master of the boat became sick, and gave the charge of it, in good condition, to Samuel Dray, who agreed to pay the toll and expenses, and take his pay out of the freight. On the way the salt became damaged, and, in consequence, only eight dollars was paid on the freight, which was not sufficient to pay Dray for his services, and the money he advanced. The boat sprang a leak, and in

[Luther *v.* Fowler.]

that condition suits were brought against it by name before a justice of the peace, under the Statute of Ohio, of February, 1840, entitled " An Act providing for the collection of claims against steamboats and other water-craft, and authorizing proceedings against the same by name." Judgments and executions were had thereon, and by virtue of the executions, the boat was sold by the constable to J. Ward & Co., who had afterwards sold one-half thereof to the defendant, John N. Fowler.

On the trial of the cause, the jury were instructed to find and assess the damages, subject to the point reserved, with consent of counsel, whether James Ward & Co. did not acquire such a property in the boat, under the constable's sale, as would entitle the defendant to the verdict. And if so, in the opinion of the court, the judgment to be entered for the defendant, notwithstanding the verdict, with the right to either party to have a bill of exceptions, as if the point had been decided at the trial, or with liberty to either party to have the case reserved turned into a special verdict, should it become necessary to take a writ of error.

On the 23d of September, 1850, Samuel Dray and George W. Parker, commenced their suit before Samuel C. Edwards, a justice of the peace, in Trumbull county, Ohio, against " the canal-boat Huron." A bill of particulars was filed as follows :

· " Canal boat Huron to Samuel Dray and Geo. W. Parker, Dr. To cash to pay tolls on said boat, $19.31. Sept. 8, 1850, and Sept. 18, 1850, to labor performed on said boat, in running it on the canal between Warren, Ohio, and Cleaveland, Ohio, twelve days, $12 ;" which account was sworn to before the justice, and thereupon a warrant was issued on the same day, directed to Amos Allison, constable of the township of Weathersfield, directing him to seize the said boat, and safely detain it in his custody, according to the statutes, to answer Samuel Dray and G. Washington Parker, in a plea of assumpsit, and to make known forth-. with to the justice, how he executed the command. To which the constable made return, that he executed it on the same day, by seizing the within named canal boat Huron, as commanded, and accompanied the return with an inventory of " 1 canal boat Huron." On the same day, " no one appearing for the boat," the cause was continued to the 26th day of September, on which day, no one appearing for the defendant, the justice, after receiving evidence to establish the plaintiff's claim, gave judgment in favor of the plaintiff against the said canal boat Huron, for the thirty-one dollars and thirty-one cents, and costs. On the 27th day of September, execution was issued to the constable, Allison, commanding him to levy on the said canal boat Huron, and make legal sale thereof, to make the debt and costs. On the 17th of October, 1850, the constable returned: " Money made in full by sale of boat Huron, to J. Ward & Co., for forty-five dollars." On

the 27th day of September, as stated by the constable in his deposition, he advertised the boat, and sold it on the 8th day of October.

On the 27th of September, Samuel Thornton also brought suit before the same justice against the canal boat Huron, and filed his bill of particulars, verified by his affidavit, as follows :

" Gilbert Henderson, master of canal boat Huron, to Samuel Thornton, Dr." Then follows a number of items for cash, cheese, sugar, coffee, &c., and "for two months and ten days' service as a hand on board said boat, from July 15, 1850, to September 26, 1850, at $16, $37.30, amounting in all to $98.91. A warrant of seizure was issued on the same day, by the justice, to the same constable, and returned as in the former case. On hearing, the same day, no one appearing for the defendant, the justice gave judgment for the plaintiff, for $98.91 debt, and costs $1.27. Execution was issued same day, which the constable made return, " October 17, 1850. By virtue of this writ, I levied upon the canal boat Huron, described in the schedule annexed, and advertised and sold the same to James Ward & Co., for forty-five dollars. There was a former execution in favor of Parker and Dray, before this levy, which took thirty-four dollars and thirty-eight cents to satisfy, and the balance I applied to this suit, which was ten dollars and sixty-two cents, retained my fees, $1.07, and paid the balance to justice."

Gilbert Henderson, whose deposition was taken on the part of the plaintiff, a release being first executed, testified that he gave no notice of the seizure of the boat to the plaintiff, or Mr. Wetmore, from whom plaintiff bought.

It was contended by the counsel for the plaintiff, on the argument, that the plaintiff being a resident of the State of Pennsylvania, at the time of seizure and sale of the boat, the justice had no jurisdiction over him, and therefore the proceedings would be void, so far as he was concerned. 2. That the Statute of Ohio did not authorize the seizure and sale of a boat, for a claim of the kind specified in either bill of particulars. 3. That the act itself, not providing for notice to parties interested, was of no binding effect beyond the limits of the State of Ohio.

1. It would be true, that the proceedings before the justice would not bind the plaintiff, were it sought here to enforce a judgment so obtained, either against the person or property of the plaintiff in the courts of this State ; and although the statute in question provides, that "if the proceeds of such sale fall short of satisfying the judgment, the balance shall remain to be collected on execution, as upon other judgments," yet we may presume that this clause would be considered inoperative even by the courts of Ohio, unless the owner or master had been summoned, or waived it by appearing to the action, the proceedings

being *in rem*, and the judgment having no other effect than to dispose of the *res* in controversy. But the justice had jurisdiction over the property. In *Steel* v. *Smith*, 7 W. & S. 488, it was said: "Jurisdiction of the person or property of an alien, is founded on its presence or *situs* within the territory. Without this presence or *situs*, an exercise of jurisdiction is an act of usurpation. An owner of property who sends it abroad, subjects it to the regulations in force at the place, as he would subject his person by going there. The jurisdiction of either springs from the voluntary performance of an act, of whose consequence he is bound to take notice."

And in *Bissel* v. *Briggs*, 9 Mass. 462, it was said by Parker, Chief Justice: "A debtor living in Massachusetts may have goods, effects, or credits in New Hampshire, where the creditor lives. The creditor there may lawfully attach these, pursuant to the laws of that State, in the hand of the bailiff, factor, trustee, or garnishee of his debtor; and on recovering judgment, those goods, effects, and credits may lawfully be applied to satisfy the judgment; and the bailiff, factor, trustee, or garnishee, if sued in this State for those goods, effects, and credits, shall in our courts be protected by that judgment, the court of New Hampshire having jurisdiction of the cause, for the purpose of rendering that judgment, and the bailiff, factor, trustee, or garnishee producing it, not to obtain execution of it here, but for his own justification. If, however, these goods, effects, and credits are insufficient to satisfy the judgment, and the creditor should sue an action on that judgment in this State to obtain satisfaction, he must fail, because the defendant was not personally amenable to the jurisdiction of the court rendering the judgment."

2. It might be a question of much doubt, whether the Statute of Ohio authorized the sale of a boat, upon claims for provisions furnished for the use of the crew, and for the wages of the boatmen. The decisions of the courts of that State, in the construction of this act, are entitled to our respect, and we consider them binding upon us, although they might not accord with our views. In *Lewis* v. *Schooner Cleveland*, 12 Ohio, 342, it was decided that a claim for seaman's wages is within the meaning and provisions of the act; and in *Canal Boat Huron* v. *Simmons*, 11 Ohio, 448, that the act extends the right of recovery to provisions, and all other necessary articles furnished for the use of the boat. These decisions seem to be conclusive against the second objection raised by the counsel for the plaintiff. Under the law, as therein laid down, the purchaser bid for the property, and bought it from the constable. It would, we apprehend, be in bad faith were we to undertake to examine into the propriety of this construction of the statute. Full faith and credit are to be given in spirit, as well as in letter, to the public acts, records, and judicial proceed-

[Luther *v.* Fowler.]

ings of other States, when not sought to be extended beyond their rightful jurisdiction.

3. The evidence does not make it appear that there was notice to any one, either the owner or master of the boat, to be and appear, and be heard, or any authority to the constable to give such notice, either by the service of the writ or otherwise. The giving of notice, by publication, or the issuing of a writ requiring such notice to be given, would not alter the case, the statute not requiring such notice, or any notice to be given. The objection then must go against the act itself, as conferring an unconstitutional jurisdiction.

On this point, we have been referred to the opinion of Conkling, Justice, in the case of *The Globe*, reported in the American Law Legister, wherein the cases are cited, and especially in the opinion of Justice Story, in 3 Sumner's Rep. 600, in which that eminent jurist, referring to a case of seizure and condemnation under a municipal law of Mexico, said: "I hold, therefore, that if it does not appear from the face of the record of the proceedings *in rem*, that due notice by some public proclamation, or by some notification or monition acting *in rem*, or attaching to the thing, so that the parties in interest may appear and make defence, and in point of fact the sentence of condemnation has passed upon *ex parte* statements, without their appearance, it is not a judicial sentence, conclusive of the rights of foreigners, nor to be treated in the tribunals of foreign nations, as importing verity in its statements or proofs." We have not had an opportunity to examine this case in Sumner, and therefore cannot say what force it should have in the decision of the question; but we think the question there was not the same as is here presented.

Not being personally within the jurisdiction of the court, or within the State, it is not easily comprehended how a notice by hand-bills could be presumed to reach the owner in time, if he happened to reside in a distant State; and therefore to have a provision for such notice in the statute, it being optional to make it long or short, could not affect the constitutionality of the act, although it might materially bear upon its policy or justice. Such a notice, it might be said, would meet the eye of the agent, or person in possession of the boat; but the seizure of the boat by an officer, under a law of which the owner and agent are bound to take notice, is equally, if not more effective. Had the boat been sold without such a seizure, or without advertisement, or did the statute authorize the sale without such seizure, we might be called upon to declare it unconstitutional, as depriving a citizen of his property, without due process of law. The statute gives a party interested the right of appeal. Did it deprive him of it, or the opportunity of being heard, we might disregard it. But

[Luther v. Fowler.]

how can the right of appeal be exercised, without notice of the proceedings? It is sufficient that the thing itself is taken into the custody of the law, and thereby becomes, intrinsically, notice to all the world.

The owner of property, sending it to another State, sends it subject to the laws of that State, and must, if he wish to preserve his rights, put it in the care of an agent who will guard his interest. Should the agent fail to do so, it is his misfortune. But the agent may be confined by sickness, as in the present case, and be unable to take care of the rights of his principal? So might the principal, were he even within the jurisdiction, and notified of the proceedings. The illness of a party, or the faithlessness of his agent, would be no ground for declaring a judicial sale void, were the process otherwise regular.

The worst effect of the Act of Ohio, and the decisions under it, seems to be, that one may be deprived of his property for the debt of another. The proceedings *in rem*, would, in our opinion, pass the title to the property, and not merely the interest of the owner, master, steward, or others contracting the debt. A contrary effect was imputed to it, in the opinion of Justice Conkling, before cited, wherein the sale was said to have no greater operation than if made under an execution, in an ordinary action *in personam*.

In the case of *Ward & Co.* v. *Taylor*, tried at Nisi Prius, before Justice Woodward, of our Supreme Court, it was said, in the charge to the jury, "that the orders of sale made by the Supreme Court in foreign attachment, were proceedings *in rem*, as truly, and in exactly the same sense, as the similar proceedings in admiralty are denominated, and hence it follows that not the owner's interest in the vessel merely, but the vessel itself was sold by the sheriff.

In that case, the proceedings in foreign attachment were against the owners, and the proceedings in admiralty against the vessel for the mariners' wages. It might be argued that such a sale discharged all liens, but not all titles. However that may be, we think the opinion of Judge Woodward somewhat shakes the authority of the opinion in the case of the *Globe*. The proceedings under the Act of Ohio, are also, we consider, purely and wholly *in rem*, and that a sale under it, if it had any effect at all, would pass the property itself as against all the world.

It must be admitted, that under this statute the property of a citizen may be disposed of too hastily, for the due administration of justice. The error consists in a too speedy trial, and it is the fault of the law which allows it. The benefits arising from it may, however, more than counterbalance its evils; and the mischiefs which were occasioned before the passage of the act, may have rendered it tolerable, and even highly beneficial to the interests

[Luther *v.* Fowler.]

of the people. As was said by Read, Justice, in *Canal Boat*
v. *Simmons:* "The difficulty of hunting up the owners of the
boat, induced the legislature in all cases, to substitute the boat
in their stead, and treat her for the purpose of a suit, as a per-
son, and sell her out to satisfy the judgments which might be
recovered."

The ease with which persons navigating our waters could escape
legal process, avoid the payment of debts contracted for the use
of the boat, and the impunity with which the persons navigating
them could inflict injury upon persons and property; the irrespon-
sible characters oftentimes of the officer and crew; the difficulty of
obtaining names, and of identifying persons, induced the legisla-
ture wisely to make the boat itself responsible for the payment
of all debts, and the good conduct of the officers.

Such a law is not to be judged of by the hard cases which may
arise under it, else all laws to aid creditors in recovering their
claims would be, *pari ratione*, set aside, and disannulled.

We are of opinion that the defence is valid in law, and there-
fore enter judgment for the defendant, *non obstante veredicto.*

Several exceptions were taken and errors assigned to the ad-
mission of testimony, being records of proceedings before a jus-
tice in Ohio, but the fourth assignment, that " the court erred in
entering judgment for defendant, *non obstante veredicto,*" seems
to cover the whole case.

*Church* and *Wetmore*, for plaintiff in error, to sustain their
exceptions in relation to the admission of evidence, referred to
*Synder* v. *Wise*, 10 B. 157, 161 ; *Welch* v. *Crawford*, 14 S. & R.
440 ; *Kattermann* v. *Stitzen*, 7 W. 189, 192 ; *Bennett* v. *Payne*,
7 W. 334 ; *Grant* v. *Levan*, 4 B. 429 ; *Kean* v. *Rice*, 12 S. &
R. 203.

Upon the fourth assignment of error, plaintiff argued that,
assuming that the proceedings before the justice in Ohio were
rightly in evidence, they do not divest the plaintiff's title to the
boat.

As already seen, the proceedings, even if within his jurisdic-
tion are not within the constitutional provision for authentication
and effect. *Snyder* v. *Wise, ante ; Mayhurin* v. *Bickford*, 6
N. Hamp. R. 657 ; *Thomas* v. *Robinson*, 3 Wend. 267 ; *Warner*
v. *Flag*, 2 Pick. 450. The proceedings are not judicial records
in a legal sense, and the jurisdiction being limited, there can be
no presumption to sustain it. Nothing can be taken by implica-
tion, and being extraterritorial, our courts have no judicial know-
ledge in the premises. Every essential must be affirmatively
established. *Thomas* v. *Robinson, ante.*

To render the adjudications of a limited jurisdiction of another
state effective here, even *in rem*, it must appear to have been *bona*

[Luther *v.* Fowler.]

*fide* regular, and that the party in interest had either actual or implied notice, and opportunity to appear. And these, the common justice of all enlightened countries require. They are essential forms of civilization. *Sawyer* v. *Ins. Co.*, 12 Mass. Rep. 291; *Broadstreet* v. *Ins. Co.*, 2 Bost. Law. Rep. 263; S. C. 3 Sumner, 600; *Magome* v. *Ins. Co.*, 3 Bost. Law. Rep. 127, 130. Attachment process is in some sense a proceeding *in rem*, and is entitled to the same considerations. Story Confl. L. s. 592; cases cited in *Andrews* v. *Herriot*, 4 Cowen, 520, in note; *Holmes* v. *Remson Herriot*, 20 Johns. 229, 261, 268. This case not being within the United States constitutional provisions relative to records from other States, the doctrine of the English law as to force and effect of foreign judgments prevails, 2 Kent, 118; and hence it must appear that the jurisdiction not only existed, but was judicially and regularly exercised both over the thing, and the person to be affected, and is the same whether the proceedings are *in rem* or *in personam*, 2 Kent, 120, n.; *Sawyer* v. *Ins. Co.*, *ante*. A party that claims title under proceedings in a foreign tribunal must show clearly that at least these requisites were pursued, *Sewell* v. *Fausatt*, 1 Wash. 271. One question here is, whether the proceedings in Ohio are conclusive. The court below held that they were so. Now, if they were those strictly of a court of record of general jurisdiction, still this jurisdiction which includes either actual or implied notice, must appear, else the plaintiff's rights as they existed by the law of his domicil foreign to the jurisdiction exercised, are not divested when the property comes again within the jurisdiction of those laws. *Benton* v. *Bergot*, 10 S. & R. 241. The general principle requires such notice; *Borden* v. *Fitch*, 15 Johns. 121; *Andrews* v. *Montgomery*, 19 Johns. 162; *Bissell* v. *Briggs*, 9 Mass. 462, 468; where Parsons, C. J., indicates, that its conclusiveness depends upon its appearing of record, that the party had such notice. This jurisdiction over the person, process and subject-matter must appear, or the adjudication is an entire nullity, and may be collaterally disallowed, or treated as utterly unavailable, when sought to be enforced, or any benefit claimed under it. *Borden* v. *Fitch*, 15 Johns. 141. Same if not served with the process; Ib. 142; *Slocum* v. *Wheeler*, 1 Day, Conn. R. 429, 440; *Greman* v. *Raymond*, Ib. 40, 45; S. P. *Phelps* v. *Holker*, 1 Dall. 261; *Andrews* v. *Herriot*, 4 Cow. 524, n., and cases there cited; *Buchanan* v. *Buckin*, 9 East, 192; S. C. 1 Camp. 63; and declaratory of the doctrine and in extension of the principle, is the ninth sec. of the Act, 14 April, 1851; Brightly's Purd. 670, s. 29: "If the record of a judgment of another State does not show, that personal service of the notice or process by which the suit was commenced, upon which said judgment was obtained, was made in such foreign State it

[Luther *v.* Fowler.]

shall be sufficient to maintain a plea to the jurisdiction of the court in which such judgment was rendered."

This Act of Assembly ought to be conclusive of this case. It is however in principle, only declaratory of adjudicated cases. In *Fisher* v. *Lane*, 3 Wilson, R. 297 ; the doctrine is established by the whole court. Mrs. Fisher, administratrix of her husband, brought assumpsit against Lane et al., for a debt due the intestate by defendants. The defence set up, was proceedings to judgment and satisfaction in a foreign attachment in London, wherein Fisher was defendant, and Lane et al., garnishees, and the claim due the intestate attached. Four defaults were entered of record against Fisher, and the garnishees actually notified to show cause why the plaintiff therein should not have judgment for the amount attached, and thereupon execution was awarded and upon pledges being given to restore, &c., the amount was collected from them. It appeared that no actual notice was ever given to Fisher, and none implied further than might be assumed from the pendency of these proceedings. In reply to the answer by Fisher, of want of notice, it was shown that by custom (the law) of London, notice was not required. But the court said such a law was contrary to the first principles of justice, and could not be recognized, and enforced the second payment from the garnishees.

The same principle is fully recognized by Marshall, C. J., in the case of *The Mary*, 9 Cran. 126 ; 3 U. S. Cond. R. 306. The only exception is there stated, and the reasons for it indicated, but which have no application here. Admiralty prize courts have an exclusive jurisdiction, and hence their decisions are necessarily conclusive on all other tribunals. The whole world are deemed parties, and therefore bound by their decrees. Being the open public courts of nations, all are deemed parties and subject to the usual implied notice, and hence he says : " The principle of natural justice, and which is of universal obligation that, before the rights of an individual are bound by a judicial sentence, he shall have notice either actual or implied of the proceedings against him, is not disturbed. Where the proceedings are exclusively *in rem*, as in prize courts, the seizure is notice to the master direct, and therefore constructive notice to all having any interest to protect, of which he is deemed the legal guardian ; p. 312. The very ground then for this principle, even in prize courts, and in proceedings exclusively *in rem*,—and it nowhere else prevails,—is that all having interest are in law immediate parties, and the master is bound and supposed to act for all concerned. Per Washington, in *Croudson* v. *Scoward*, 2 Cond. R. 164 ; 4 Cran. 434. But *cessante ratione, cessat lex*. And this is most certainly the case when the master himself becomes, as it were, the libellant, seeking the condemnation, for he cannot then be deemed the

[Luther *v.* Fowler.]

guardian and protector of the rights of owners unless it be such protection as wolves afford lambs.

The proceeding now in question under the statute of Ohio, cannot be considered exclusively *in rem*, although it appears they were against the boat alone, for the sixth sec. directs them to be conducted as in other cases of process served and returned, and if the property seized does not on sale satisfy the judgment, the balance shall be collected on execution *in personam*, of course as in other judgments. This is not much like admiralty decrees *in rem*. But it seems that the binding effect of these proceedings on plaintiff's title depends exclusively upon the supposed analogy. Yet we read in the 2d sec. of art. 3, of the United States Constitution, that this character of jurisdiction is exclusively in the national government, and by the Act of Congress of 1789, is given exclusively to respective district courts.

The principal question involved in this case has been already decided by the District Court of the United States, in New York, in the case of *The Globe*, 10 Am. L. Jour. 337, N. S. vol. 3. It is the only case, so far as I am aware, in which the *ex*-territorial effect of proceedings under this Ohio law, has been adjudicated upon. The Globe was owned in Detroit, and had been seized under the provisions of this law at Cleveland, and sold for about $14,000, in satisfaction of two claims of nearly that amount against it. And the question was, whether the interest of persons not notified of, nor parties to the proceedings in Ohio, under this statute, was divested, and after " a careful scrutiny and deliberate consideration," it was decided in the negative.

The same universal doctrine requiring notice, will be found in *New Jersey Turnpike* v. *Hall*, 2 Harr. 337 ; *Corliss* v. *Corliss*, Vermont R. 387, 389 ; *Kinderhook* v. *Claw*, 15 Johns. 537.

The statute of Ohio, so far as it is material to this case, is as follows :

Sec. 1. That steamboats and other water-crafts, navigating the waters within or bordering upon this State, shall be liable for debts contracted on account thereof, by the master, owner, steward, consignee, or other agent, for materials, supplies, or labor, in the building, repairing, furnishing, or equipping the same, or due for wharfage ; and also for damages arising out of any contract for the transportation of goods, or persons, or for injuries done to persons or property by such craft; or for any damage or injury done by the captain, mate, or other officer thereof, or by any person under the order or sanction of either of them, to any person who may be a passenger or hand on such steamboat or other watercraft, at the time of the infliction of such damage or injury.

Sec. 2. Any person having such demand, may proceed against the owner or owners, or master of such craft, or against the craft itself.

[Luther *v.* Fowler.]

SEC. 4. The clerk of the proper court shall, on receiving such præcipe, issue a warrant, returnable as other writs, directing the seizure of such craft by name or description, as provided for in the third section of this act, or such part of her apparel or furniture as may be necessary to satisfy the demand, and to detain the same until discharged by due course of law; and the officer executing the writ, shall return with it an inventory of the effects seized and held under it.

SEC. 5. That the owner, master, steward, consignee, or other agent of such steamboat, or other water-craft, may discharge the property seized, upon entering into bond to the officer taking the same, with two good and sufficient sureties, within the county where such craft may have been seized, in double the amount of the demand sworn to be due by plaintiff, agent, or attorney, conditioned that such property, or double the amount sworn to be due by plaintiff, agent, or attorney, shall be forthcoming to answer the judgment under such seizure.

SEC. 6. That upon the return of the writ, the pleadings and other proceedings shall be, as in other cases of process, served [and] returned; and after judgment, the property seized, and still held, may be sold upon execution, to satisfy the judgment; and the overplus-money, if any, arising from such sale, shall be returned to the owner, master or agent, on demand, as surplus-money is in other cases of execution; and if the proceeds of such sale fall short of satisfying the judgment, the balance shall remain to be collected on execution as upon other judgments; and in case the judgment shall be against the plaintiff, the property seized shall be restored, and the costs shall be collected as in other cases.

SEC. 7. Justices of the peace, within their townships, shall have jurisdiction under this act, when the amount claimed shall not exceed one hundred dollars, and shall proceed, as near as may be, according to the rules prescribed herein for the other courts.

*Stewart,* for defendant in error, referred to *Kean* v. *Rice,* 12 S. & R. 230; *Snyder* v. *Wise,* 10 Barr, 160; *Welsh* v. *Crawford,* 14 S. & R. 140; and relied on the reasons given by the court below.

The opinion of the court was delivered December, 1854.

PER CURIAM.—This case was tried with entire accuracy in the court below, and we cannot better justify the decision on the reserved question than by referring to the opinion of the honorable judge who tried the case.

Judgment affirmed.